People v Ayer

2026 NY Slip Op 02502

April 24, 2026

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

v

JOSEPH D. AYER, ALSO KNOWN AS JOSEPH DAVID AYER, ALSO KNOWN AS JOSEPH AYER, DEFENDANT-APPELLANT.

Supreme Court of the State of New York, Appellate Division, Fourth Judicial Department

Decided on April 24, 2026

82 KA 23-00676

Present: Lindley, J.P., Curran, Ogden, Greenwood, And Hannah, JJ.

THE LEGAL AID BUREAU OF BUFFALO, INC., BUFFALO (KERRY A. CONNER OF COUNSEL), FOR DEFENDANT-APPELLANT.

KEVIN T. FINNELL, DISTRICT ATTORNEY, BATAVIA (WILLIAM G. ZICKL OF COUNSEL), FOR RESPONDENT.

Appeal from a judgment of the Genesee County Court (Melissa Lightcap Cianfrini, J.), rendered August 9, 2022. The judgment convicted defendant upon a jury verdict of burglary in the second degree and petit larceny.

[*1]

It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.

Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of burglary in the second degree (Penal Law § 140.25 [2]), and petit larceny (§ 155.25). We affirm.

Contrary to defendant's contention, we conclude that County Court properly refused to suppress tangible evidence and statements he made to the police (see generally People v De Bour, 40 NY2d 210, 222-223 [1976]; People v Harvey, 170 AD3d 1675, 1677 [4th Dept 2019], lv denied 33 NY3d 1031 [2019]). Indeed, we conclude that the police conduct was justified in its inception and at every subsequent stage of the encounter leading to defendant's arrest (see People v Pettiford, 173 AD3d 1716, 1716 [4th Dept 2019], lv denied 34 NY3d 936 [2019]; People v Bradley, 137 AD3d 1611, 1611 [4th Dept 2016], lv denied 27 NY3d 1128 [2016]).

Specifically, inasmuch as defendant was found at the start of the encounter in close physical and temporal proximity to the scene of the reported incident and defendant's physical characteristics and clothing matched the description of one of the individuals involved in the incident, we conclude that the officers had a founded suspicion that criminal activity was afoot, thereby justifying their initial common-law inquiry of defendant (see People v Gayden, 126 AD3d 1518, 1518 [4th Dept 2015], affd 28 NY3d 1035 [2016]; People v Atkinson, 185 AD3d 1438, 1439 [4th Dept 2020], lv denied 35 NY3d 1092 [2020]; see generally De Bour, 40 NY2d at 223), which included asking defendant if he had any weapons (see People v Stevenson, 7 AD3d 820, 821 [2d Dept 2004]; People v Park, 294 AD2d 887, 888 [4th Dept 2002], lv denied 98 NY2d 679 [2002]). In response, defendant told the police that he possessed a knife, providing the police with reasonable suspicion that he was armed, and therefore the police were, at the start of the encounter, permitted to conduct a brief pat-down frisk to ensure officer safety (see People v Batista, 88 NY2d 650, 654 [1996]; People v Ginty, 204 AD3d 1487, 1488-1489 [4th Dept 2022]; see also People v Muhammed, 196 AD3d 1151, 1152-1153 [4th Dept 2021], lv denied 37 NY3d 1061 [2021]).

Furthermore, we conclude that, during the course of their conversation with defendant and the codefendant, the police had reasonable suspicion that defendant had committed a crime sufficient to detain him in their patrol vehicle (see People v Henry, 207 AD3d 1062, 1063 [4th Dept 2022], lv denied 39 NY3d 940 [2022]; Pettiford, 173 AD3d at 1717; People v Santiago, 142 AD3d 1390, 1391 [4th Dept 2016], lv denied 28 NY3d 1127 [2016]). In addition to [*2]defendant having been found near the scene of the reported incident and matching the description of one of the suspects, defendant admitted to the police that he had trespassed on someone's property, and the codefendant told the police that she and defendant had broken into a home and stolen property from inside. Thus, under the totality of the circumstances, the police clearly had a reasonable suspicion of a crime to justify detention of defendant while they investigated further (see Henry, 207 AD3d at 1063; Santiago, 142 AD3d at 1391; see generally People v Hicks, 68 NY2d 234, 238-242 [1986]).

We reject defendant's contention that, during the police encounter, the police unlawfully searched a lunch box that was in his possession inasmuch as the totality of the circumstances establishes that he expressly and voluntarily consented to the police search (see People v Fioretti, 155 AD3d 1662, 1663 [4th Dept 2017], lv denied 30 NY3d 1104 [2018]). To the extent that defendant also contends that the court erred in refusing to suppress statements made by the codefendant, we reject that contention and note that he lacks standing to seek suppression of her statements (see People v Davis, 103 AD3d 810, 812 [2d Dept 2013], lv denied 21 NY3d 1003 [2013]; People v Hamilton, 232 AD2d 899, 900-901 [3d Dept 1996], lv denied 89 NY2d 942 [1997]; see generally People v Henley, 53 NY2d 403, 407-408 [1981]).

We reject defendant's contention that the conviction is not supported by legally sufficient evidence. Viewing the evidence in the light most favorable to the People (see People v Contes, 60 NY2d 620, 621 [1983]), we conclude that the evidence provides a "valid line of reasoning and permissible inferences" that could lead a rational person to conclude, beyond a reasonable doubt (People v Delamota, 18 NY3d 107, 113 [2011]), that defendant committed the offense of burglary in the second degree. Specifically, there was evidence at trial—i.e., body-worn camera footage from immediately after the incident—that contained statements from the codefendant admitting that she and defendant had just broken into a residence and stolen property from inside. Moreover, the evidence at trial established that defendant was found in the vicinity of the broken-in home shortly after the burglary allegedly occurred, and was found in possession of property that came from the house. We further conclude that, viewing the evidence in light of the elements of all the crimes as charged to the jury (see People v Danielson, 9 NY3d 342, 349 [2007]), the verdict is not against the weight of the evidence (see generally People v Bleakley, 69 NY2d 490, 495 [1987]). Even assuming, arguendo, that a different verdict would not have been unreasonable, we conclude that "the jury was in the best position to assess the credibility of the witnesses and, on this record, it cannot be said that the jury failed to give the evidence the weight it should be accorded" (People v Dillard, 227 AD3d 1501, 1502 [4th Dept 2024], lv denied 42 NY3d 926 [2024] [internal quotation marks omitted]; see People v Wilcox, 192 AD3d 1540, 1541 [4th Dept 2021], lv denied 37 NY3d 961 [2021]; People v Elmore, 175 AD3d 1003, 1005 [4th Dept 2019], lv denied 34 NY3d 1158 [2020]).

We reject defendant's contention that the court erred in accepting his waiver of a conflict of interest stemming from defense counsel's representation of both defendant and the codefendant. Specifically, we conclude that the record establishes that the court, upon learning of the potential conflict of interest, conducted an inquiry "to ascertain, on the record, [that defendant] had an awareness of the potential risks involved in his continued representation by the attorney and had knowingly chosen to continue such representation" (People v Lombardo, 61 NY2d 97, 102 [1984]; see People v Magee, 182 AD3d 996, 997 [4th Dept 2020], lv denied 35 NY3d 1028 [2020]; see generally People v Gomberg, 38 NY2d 307, 313 [1975]). To the extent that defendant contends that defense counsel was ineffective in continuing to represent defendant despite the potential conflict of interest, we reject that contention inasmuch as defendant validly waived the conflict and "knowingly chose to have defense counsel represent him after being fully apprised of the potential conflict" (People v Kopp, 33 AD3d 153, 158 [4th Dept 2006], lv denied 7 NY3d 849 [2006], cert denied 549 US 1227 [2007]; see Magee, 182 AD3d at 997).

Defendant's contention that he was deprived of a fair trial by prosecutorial misconduct is, for the most part, unpreserved for our review inasmuch as defendant failed to object to all but one of the statements he now challenges on appeal (see People v Kellam, 237 AD3d 1518, 1519 [4th Dept 2025]; People v Watts, 218 AD3d 1171, 1174 [4th Dept 2023], lv denied 40 NY3d 1013 [2023]; People v Torres, 125 AD3d 1481, 1484 [4th Dept 2015], lv denied 25 NY3d 1172 [2015]), and we decline to exercise our power to review that contention as a matter of discretion in the interest of justice (see CPL 470.15 [6] [a]). With respect to the preserved challenge, the prosecutor's comment on summation regarding inferences one would have to make to conclude [*3]that defendant had no involvement in the burglary did not constitute improper burden shifting inasmuch as the comment did not suggest to the jury that defendant had to prove anything to avoid conviction (cf. People v Griffin, 125 AD3d 1509, 1510 [4th Dept 2015]). Regardless, even assuming that the aforementioned comment was improper (see People v Derby, 242 AD3d 1627, 1628 [4th Dept 2025], lv denied 45 NY3d 936 [2026]), that one isolated comment was not so egregious that it deprived defendant of a fair trial and warrants reversal (see People v Soto, 242 AD3d 1613, 1615 [4th Dept 2025], lv denied 44 NY3d 1068 [2026]; People v Hills, 234 AD3d 1311, 1314 [4th Dept 2025], lv denied 43 NY3d 963 [2025]; see generally People v Wright, 25 NY3d 769, 780 [2015]).

Defendant also contends that the court erred in denying his request to instruct the jury, in connection with the burglary charge, on the lesser included offense of trespass. We reject that contention. We note that defense counsel did not actually request that the court instruct the jury on trespass as a lesser included offense of burglary in the second degree in connection with defendant's alleged entry into a home. Rather, defense counsel requested the instruction in connection with defendant's trespass on another person's land—an offense that was not related to the alleged burglary, was uncharged, and was not before the jury. Further, we reject defendant's contention that defense counsel was ineffective in failing to request any additional instructions on lesser included offenses. With respect to a claim of ineffective assistance of counsel, "it is incumbent on defendant to demonstrate the absence of strategic or other legitimate explanations" for defense counsel's allegedly deficient conduct (People v Rivera, 71 NY2d 705, 709 [1988]; see People v Benevento, 91 NY2d 708, 712 [1998]). The determination whether to seek a jury charge on a lesser included offense is a quintessentially tactical determination (see People v McGee, 20 NY3d 513, 519 [2013]; People v Baez, 175 AD3d 982, 985 [4th Dept 2019], lv denied 34 NY3d 1015 [2019]), and defendant failed to show the absence of a strategic basis for defense counsel's choice not to demand additional instructions regarding the lesser charges (see People v Collins, 167 AD3d 1493, 1498 [4th Dept 2018], lv denied 32 NY3d 1202 [2019]; see generally People v Trotman, 154 AD3d 1332, 1333 [4th Dept 2017], lv denied 30 NY3d 1109 [2018]). Indeed, defense counsel's strategy not to request additional lesser included offense charges was reasonable inasmuch as, without a request for a charge on lesser included offenses of attempted burglary in the second degree or burglary in the third degree, "the chances of defendant being acquitted outright with respect to [burglary in the second degree] were increased" (People v Wright, 235 AD3d 1248, 1249 [4th Dept 2025], lv denied 43 NY3d 947 [2025]).

Finally, we conclude that the sentence is not unduly harsh or severe.

Entered: April 24, 2026

Ann Dillon Flynn

Clerk of the Court